MARCELLUS M. SEABROOK AND OTHERS *vs.* WILLIAM GREGG, JR., AND OTHERS.

Testator devised to his son G, "for and during his natural life, the rents, issues, uses, occupation and enjoyment of" certain lands, and from and after his death "unto the issue" of G, "living at the time of his death, who attain the full age of twenty-one years of age, or die before that time, leaving lawfully begotten issue who shall attain the full age of twenty-one years, living at the time of the death of the said" G, with cross remainders among the issue, and with a limitation over to the testator's "right heirs," in case there should be a failure of all such issue. G died leaving issue: *Held*, That the issue took vested remainders, liable to be divested in the event of their dying under the age of twenty-one years.

The Court will always hold a remainder to be vested rather than contingent, when it can do so consistently with the intention apparent in the terms of the limitation.

It is not a fraud in an infant to avail himself of his infancy to set aside his own grant or covenant, where, the grantee or covenantee was not deceived or misled by any misrepresentation or concealment.

To a bill filed by a minor without a next friend, an exception on that ground comes too late, if taken at the hearing of an appeal from the decree. Leave will be given to the plaintiff to move the appointment *nunc pro tunc*, in the Circuit Court.

A decree for the partition of property held subject to limitations should protect the future interests by directing that the shares be held subject to those limitations.

Columbia, April, 1870.

BEFORE CARPENTER, J., AT CHARLESTON, JUNE TERM, 1869.

This was a bill for partition filed by Marcellus M. Seabrook, Archibald Clark Seabrook and Eliza Sarah Seabrook, plaintiffs, against Wm. Gregg, Jr., and others, defendants.

The plaintiffs, Marcellus M. and Archibald Clark, were the children of George Washington Seabrook, deceased, and the plaintiff, Eliza Sarah, was the only daughter of a son of the said George Washington, who died in the lifetime of his father.

The facts of the case were as follows: William Seabrook, the elder, was seized and possessed, at the time of his death, of the plantation on John's Island hereinafter mentioned. He was the father of the said George Washington Seabrook, and by his will, bearing date the 21st day of January, 1836, he devised, *inter alia*, as follows: (*a*)

"I give, devise and bequeath to my son, George Washington Seabrook, for and during his natural life, the rents, issues, uses, occupation and enjoyment of all that one-half of my plantation on John's Island, being a part of Seabrook's, formerly Simons' Island, situate, lying and being to the southward of the middle road, agreeably to the plat or plan thereof of the said John Wilson, Surveyor; and also to my said son, George Washington Seabrook, for and during his natural life, the rents, issues, occupation, and enjoyment of all that plantation or tract of land on Edisto Island, recently purchased by me of Benjamin Whaley, and containing four hundred acres, more or less; and from and after the death of my said son, George Washington Seabrook, I give, devise and bequeath both the said two tracts of land, and the implements thereon, unto *the issue* of my said son, George Washington Seabrook, living at the time of his death, who attain the full age of twenty-one years of age, or die before that time leaving lawfully begotten issue who shall attain the full age of twenty-one years, living at the time of the death of the said George Washington Seabrook, if one, then to that one, his or her heirs and assigns, absolutely and forever, share and share alike, as tenants in common; and should any or either of the lawfully begotten issue of the said George Washington Seabrook die before him, and before attaining twenty-one years, without leaving lawfully begotten issue, who shall attain the age of twenty-one years, living at the time of the death of my said son, then the share or

(*a*) For a copy of the will in full, see *Seabrook* vs. *Seabrook*, McM. Eq., 215, note.

shares of such issue so dying, whether specifically given or otherwise accruing under this clause in my will, shall go to the survivor or survivors, and to the lawful issue of any of the issue of my said son, who may have previously died, leaving lawful issue living at the death of my said son, George Washington Seabrook, who, to wit, the said issue, shall attain the full age of twenty-one years, share and share alike, as tenants in common; the surviving issue of any of the deceased issue of my said son George Washington Seabrook, taking among them, if more than one, the share or shares to which the parent or parents, if alive, would have been entitled.

"And should my son, George Washington Seabrook, depart this life without leaving lawfully begotten issue, who shall attain the full age of twenty-one years, living at the time of his death, or dying before that time, leave lawfully begotten issue to live until the parent or parents, if alive, would have reached twenty-one years of age, then, and in these cases, on the failure of the issue of the said George Washington Seabrook, within the time hereby limited, I give, devise and bequeath the said two plantations or tracts of land, absolutely and forever, unto the right heirs of me, the said William Seabrook, who shall be living at the time of the failure of the said issue of my said son, George Washington Seabrook, within the time limited, as aforesaid; it being my wish, as I think the lands mentioned in this clause of my will are among the best lands in the State of South Carolina, that they may remain limited in my family as long as the law will permit."

The testator died before the year 1839, leaving his son, George Washington, surviving him. On the 15th November, 1863, George Washington Seabrook conveyed, by feoffment and livery of seizin, the plantation on John's Island, devised to him by his father, to the defendant, William Gregg, Jr., and, on the 18th day of the same month and year, his eight children, then living, executed a deed, whereby they released to the said William Gregg, Jr., "all their right, interest, title, claim and demand, whatever, either in law or equity, in or out of the plantation" above mentioned. This deed contained a warranty of title, in the usual form, and a covenant that George Washington Seabrook "had in himself good right, power, and absolute authority to grant, convey and enfeoff the said lands and their appurtenances unto the said William Gregg, the younger, his heirs and assigns."

The plaintiffs, Marcellus M. and Archibald Clark, were two of the children of George Washington Seabrook who executed the deed

last mentioned, but they were both minors when it was executed, and Archibald Clark is still a minor. The father of the plaintiff, Eliza Sarah, did not execute the said deed, and she was a minor, about ten years of age, when this bill was filed.

George Washington Seabrook being dead, the plaintiff filed this bill, claiming that, under the limitations of the will of William Seabrook, they were entitled to one-third of the said plantation, and praying partition of the same. The principal question argued on the Circuit was, whether the remainder to the plaintiffs was vested or contingent, it being conceded that, if it was vested, the plaintiffs were not barred by the feoffment, with livery of seizin of George Washington Seabrook.

His Honor the presiding Judge sustained the construction contended for by the plaintiffs, and ordered that a writ of partition do issue, directing the Commissioners therein named to set apart to the plaintiffs one-third of the said plantation.

The defendant, William Gregg, Jr., appealed, and now moved this Court to reverse the decree, on the grounds—

1. Because the complainants have no right, title or interest in the plantation ordered to be partitioned, and never had any, as the will of William Seabrook created a life estate in George W. Seabrook, with contingent remainders, to take effect only upon his death; and that his feoffment with livery of seizin to the defendant effectually barred all such remainders.

2. Because the decree overturns the law of property in real estate, in this State, and destroys the validity of one of the common assurances of title therein.

*Campbell, McCrady,* for appellant, cited *Johnson* vs. *Arnold,* 1 Ves., Sr., 169; *Doe dem, Goldin* vs. *Lakeman,* 2 B. & Ad., 42; 2 Jarm. on Wills, 534; 2 Bl. Com., 169; Fearne, 1, 9; 2 Cruise Dig., 261, 263; 4 Kent, 206; 2 Bl. Com., 168, 274; 1 Green. Cruise Dig., 775; 10 Ves., 283; 2 Bl. Com., 294; *Redfern* vs. *Dehon,* Rice, 464.

Sept. 8, 1870. The opinion of the Court was delivered by

MOSES, C. J. To determine the question before the Court, it is not so necessary to inquire into the nature and extent of the interests which George W. Seabrook was to enjoy for life in the real estate referred to in the pleadings under the will of his father, Wm. Seabrook, as to ascertain the effect of the terms by which the remainder is devised to his issue.

Whether during his life he had but the bare right "to the rents, uses, issues, occupation and enjoyment of all that one-half of the plantation on John's Island, and the same in the plantation on Edisto Island, purchased of Whaley," or whether he had an estate for life in both, will not affect the rights of the grandchildren (his issue) if they had a vested interest at the death of the testator. A reference to the terms employed might be of avail in contributing to shew the intention of the testator as to the remainder; but conceding that they are "equivalent to a devise of the land itself, and will carry the legal as well as the beneficial interest therein," still if the estate in remainder was vested, by no act of the life-tenant, could he defeat the rights of those upon whom, at his death, it was cast ?

" When the right is one of present possession, and the party is in possession, whether personally or by substitute, the estate is said to be vested in possession.   When it is a present right of having the possession whenever it may become vacant by the determination of the preceding estate, or at some other future time, to which only the possession, and not the ownership, is postponed, the estate is said to be vested in right or interest."—Smith on Real and Pers. Property, 228.

A contingent remainder can never vest unless it vests during the continuance of the previous estate, or at the very moment of the determination of it.

As to such estates as vest presently, "though there may be a particular estate to distinguish them to be remainders, yet, as to supporting them, there needs none, because they vest presently and certainly in the persons to whom they are limited."—2 Crabb on Real Property, Sec. 2336.

In all the cases of this nature, if there is enough found in the will to make the attaining of twenty-one not a condition precedent, but a condition subsequent, or, in other words, to shew that the age was the period at which, if the person did not reach it, the estate was to go over, the interest will be held to be vested.

" Sometimes a limitation may seem, in terms, to be contingent, although they, in fact, mean no more than would have been implied without them, not amounting to a condition precedent, but only denoting the time when the remainder is to vest in possession."— 2 Crabb on Real Prop., Sec. 2335; 1 Fearne, 241.   The author last referred to, in his first volume, at page 738, says : " Although there is no doubt that a devise to a person, if he shall live to attain

a particular age, standing alone, would be contingent, yet, if it be followed by a limitation over, in case he dies under age, the devise over is considered as explanatory of the sense in which the testator intended the devisee's interest in the property to depend on his attaining the specified age, namely, that, at that age, it shall become absolute and indefeasible ; the interest in question, therefore, is construed to vest *instanter.*"

The annotator, Mr. Perkins, in note 6, at the same page, says, " even independently of this particular rule, it is obvious that a limitation over, disposing of the property to another, in case of the devisee dying under certain circumstances, always supplies an argument in favor of the prior devisee taking an immediately vested interest." He refers to several cases, and adds, " though the contrary is sometimes contended."

. Mr. Smith, in his learned treatise on Executory Interests, 2 Fearne, 174, although questioning the soundness of two of the decisions which are usually referred to as authority for the doctrine, nevertheless concedes it and remarks that where the conditional expressions " do not precede but follow the devise, and constitute part of the same sentence in which it is made; and there is a devise over, simply in the event of his not attaining such age, the conditional expressions are not construed as a condition precedent, but as forming a regular special limitation of the indirect kind, or an irregular limitation, amounting to the same as the words, if he should continue to live till, or if he should not die before he attains 21 ; and the interest, instead of being a springing interest or a contingent remainder, is held to be a vested interest, either immediate or in remainder, as the case may be, subject to be divested as well by the operation of the special limitation as by the operation of the devise over."

The rule so set forth is sustained by numerous authorities, and, though doubts have been expressed by many able Judges, they have been adhered to, as settling rules of construction in regard to devises, which it was to the interest of society should not be changed with the minds of those whose duty it was to enforce them as established.

In *Boraston's* case, 3 Rep., 19, there was a devise of land to A. and B., for eight years, and, after the term, to the executors, till H. should accomplish his age of twenty-one years, and then to him and his heirs forever. H. died under twenty-one. It was contended that it was contingent on that event, it being uncertain whether he

would ever attain that age. It was held, however, that the advent of time, when, &c , and then, &c., did not make anything necessary to precede the settling of the remainder, and only expressed the time when the remainder to H. should take effect in possession, and not when it should become vested.

In *Brownfield* vs. *Chowder*, 1 B. & P., 313, the testator devised to A., for life, and, after his death,'to B., for life, and at the death of A. and B., or the survivor, to his godson, if he should live to twenty-one; but if he died before, and his brother should survive him, then to his brother, if he lived to attain twenty-one years; but if both of them died before either arrived at age, then to another godson, and his heirs forever. The two life estates determined before the first devisee in fee attained twenty-one, and the heirs-at-law of the testator insisted that the remainders were all contingent and had failed. It was held the godson took a vested estate in fee, regarding words of condition, "if he attained twenty-one," as used only to denote the time when the estate should come into possession. That "the true sense was, that the devisor meant him to take it as an immediate estate in fee, but that it was to go over in the event of his dying under twenty-one."

*Edwards* vs. *Hammond*, 3 Lev., 132, preceded it, and Sir James Mansfield, C. J., delivering the opinion of the Court (in *Brownfield* vs. *Chowder*,) said: "The apparent intention, as collected from the whole will, must always control particular expressions. *Edwards* vs. *Hammond* is not either opposed or weakened by any case. No doubt the general meaning of the word "if" implies a condition precedent, unless it be controlled by other words."

In *Doe d. Roake* vs. *Nowell*, 1 M. & S., 327, the testator devised his estate to J. R. for life, and on his death, to and among his children, equally, at the age of twenty-one, and their heirs, as tenants in common; but if only one child should live to attain such age, to him or her, and his or her heirs-at-law, at his or her age of twenty-one; and in case J. R. should die without lawful issue, then over. The children were *held* to take vested remainders, and they recovered against the purchaser of the father, who, during the infancy of two of the children, and before the birth of others, levied a fine and suffered a recovery, and conveyed to the purchaser, and died leaving his children under age. *Lord Ellenborough*, C. J., said, "he could see nothing to distinguish it from *Brownfield* vs. *Chowder*, and *Doe* vs. *Moore*." The judgment was afterwards affirmed by the House of Lords.

In *Doe* vs. *Moore*, 14 East., 601, there was a devise in fee to F. M., when he attains twenty-one; should he die before twenty-one, then to his brother when he attains twenty-one, with like remainder over. The decision was reserved until *Brownfield* vs. *Chowder* was disposed of, and the devisee, F. M., was *held* to take an immediate vested interest, liable to be divested upon his dying under twenty-one, Lord Ellenborough remarking, "according to the decisions on devises of real estate, a devise to A., *when he attains twenty one*, to hold to him and his heirs, and if he dies under twenty-one, then over, does not make the devisee's attaining twenty-one a condition precedent to the vesting of the interest in him ; but the dying under twenty-one is a condition subsequent on which the estate is to be divested."

If any doubts existed as to the want of strict conformity in these · authorities with the true and well recognized principles which mark the distinction between vested and contingent interests arising under devises, they were concluded by the case of *Phipps* vs. *Williams*, 5 Sim., 44.

The question there arose under a devise to trustees in trust to convey certain lands to A., the godson of testator, when, and as soon as, he should attain his age of twenty-one years; *but in case he should depart this life before he should attain the said age, without leaving lawful issue of his body*, then the lands were to follow the disposition of his residuary estate. The V. C., Sir Launcelot Shad-well, held "that A. took an immediate interest under this devise," observing, "that the legal estate here being vested in trustees made no substantial difference." An appeal was taken to the House of Lords, (*Phipps* vs. *Ackers*, 3 Cla. & Fin., 702,) where the case was retained, and seven years afterwards was re-argued in the presence of eleven Judges, who unanimously held that the godson took a vested estate on the death of the testator, subject to be divested in the event of his dying under twenty-one and without issue.

In *Dolley* vs. *Ward*, 9 Adolp. & Ellis, 582, the testator devised freehold to his daughter, Sarah, for life ; after her death, to such of her children as she then had, or may have, on their attaining twenty-one. In case of the death of either under the prescribed age, his or her share to the survivors, on attaining the proscribed age in fee. If all the children should die, then over. Held, that the children took vested estates in remainder immediately on the death of the testator.

The Courts of Equity had applied the same rule where the words

of the will imported an intention to grant the like estate. As far back as 1713, in the case of *Manfield* vs. *Dugar*, 1 Eq. Cas., ab'gd, 195, where a man " devised certain lands to his wife till his son should attain twenty-one years, then to his son and heirs. The son died at 13." The Chancellor held " that the wife's estate determined by the death of the son, and that the remainder vested immediately in the son on the testator's death." On a rehearing, " his Lordship continued of the same opinion, and grounded himself on the distinctions taken in Boraston's case."

In *Bland* vs. *Williams*, 3 Mylne & Keene, 411, the distinction is recognized in those cases where the implication arises from the peculiar form of the limitation over on the death of the prior taker under the prescribed age without issue. Sir John Leach, the Master of the Rolls, said : " Whether, in a gift of this nature, the time of vesting is postponed, or only the time of payment, depends altogether on the whole context of the will. If the gift over is simply upon the death under twenty-four, then the gift could not vest before that age. In this case, the gift over is not simply upon the death under twenty-four, but upon the death under twenty-four, without leaving issue."

Chancellor Kent, in the fourth volume of his Commentaries, p. 205, recognizes the rule resulting from the cases to which we have referred, when he says : " So a devise to A. in fee, *if*, or *when*, he attains the age of twenty-one, becomes a vested remainder, provided the will contains an intermediate disposition of the estate, or of the rents and profits, during the minority of A., *or* if it directs the estate to go over, in the event of A. dying under age."

The Supreme Court of the United States admitted the principle to its fullest extent in the case of *Williamson* vs. *Berry*, 8 Howard, 532. There, on a devise in trust " to pay the rents, &c., to Thomas B. Clarke, for his life, and from and after his death to convey the same to his lawful issue, and if he should not leave any lawful issue at his death, then in further trust to convey the premises to testator's grandson and his heirs," the Court concurred with the Circuit Court of the United States for the Southern District of New York in holding " that the first child of Thos. B. Clarke, on its birth, took a vested estate in remainder, which opened to let in his other children to a like estate, as they were successively born, and that their vested remainder became a fee simple absolute in the children living on the death of the father." Was it not as uncertain there which of the issue of T. B. C. would survive the life-tenant, as here,

under the devise to George Washington Seabrook, which of his issue would survive him, and reach the age of twenty-one years? In the event of the death, the effect in either contingency would only be to defeat or divest the estate already vested.

In the case of *Rivers, Administrator*, vs. *Fripp et al.*, 4 Rich. Eq., 276, the Court was called upon to construe a clause in the will of William Edings, which, if not identical in language with that now before us, is in no particular materially different. The testator devised to his wife for life, and after her death to his son, John Evans Edings, for life, " and after the death of both, to the issue of the son living at his death, who shall live to attain the full age of 21, or who, dying before that time, shall have issue to live until the time at which the parent or parents, if alive, would have reached the full age of 21 years," and in default of issue, then over. John Evans Edings survived the testator, leaving two sons, William M. Edings and John Evans Edings. The mother died in 1844. William M. Edings died in 1850, at the age of 20 years, leaving a son who died three months after his father, and before the father would have attained the age of 21. John Evans Edings was 18 years of age in 1851. Before John arrived at age, the personal representative of William M. Edings filed his bill, claiming a moiety of the rents and profits of the devised and bequeathed estate from the death of the life-tenant to the end of the year in which William M. Edings died. The Court *held* that William M. Edings took a vested, but defeasible interest, with immediate right to the rents and profits, although he died under 21, without leaving issue which lived until the time at which he, if alive, would have been 21.

Standing alone as a decision of the then appellate tribunal of the State on the terms of a devise, from which that before us does not differ in effect, it would be our duty to sustain it, unless its result did not appear to be consistent with authority and reason. Our examination of the principles involved in its discussion, and on which its conclusion is based, recommend it to our judgment, as carrying out the intention of the testator collected from the whole will.

The intention is to prevail. If technical terms are employed to express and denote this, they must have their legal significance, unless on the face of the instrument it is apparent that an intention was purposed different from that which their use would so intimate.

"The intent of the testator is to be the rule of construction, if the words will bear it out; but if the face of the words be such that

the intent cannot be complied with, the rules of law must take place."—*Brownsword* vs. *Edwards*, 2 Ves., Sr., 249.

The purpose of the testator, William Seabrook, was to retain these lands in his family as long as the law would permit, as he declares in the devise. Nay, further, "that they may remain limited in his family," and it is clear that he did not intend these particular plantations set apart for that portion of his own issue through his son, George Washington Seabrook, to pass to his (the testator's) own "right heirs," while any of the issue of George W. was in existence and could take as purchasers. The clauses by which he devises plantations to his other children use the same words, and in each of them a like intent is manifest.

If the interest of the children of George W., living at his death, was not a vested one, and he had died leaving children, but no one of them then of age, who would have been entitled to the profits, rents and issues, until some one of the children reached twenty-one?

If on the death of the father they in that contingency could not claim them, what was to become of the usufruct of the devise evidently intended by their grandfather for their support and enjoyment?

There needs no reference to authorities to shew that a disposition has always been manifested by the Courts, if possible, to make the remainder vested.. It will not be considered contingent unless a conclusion is forced by the whole tenor of the will, shewing that the intention of the testator precludes them from giving it effect as conferring a present interest. The reason is palpable.

It is sufficient, in this connection, to quote the language of Mr. Justice Swayne, in *Croxall* vs. *Shererd*, 5 Wall., 268 : "The struggle with the Courts has always been for that construction which gives to the remainder a vested, rather than a contingent character. A remainder is never to be deemed contingent when, consistently with intention, it can be held vested."

Our judgment is, that the issue of George Washington Seabrook took a vested interest in the real estate referred to in the pleadings, liable to be defeated in the event of their dying without attaining the full age of twenty-one years.

Although not made a ground of appeal for the reversal of the decree, yet it was insisted in the argument, that the plaintiffs are not entitled to the partition claimed under their bill, because if they had an estate which their father, by virtue of his life-interest, could

not bar, they have committed a fraud by uniting with the children of the said George Washington Seabrook, of age, in the deed, releasing to Gregg "all their right, interest, title, claim and demand whatever, either in law or equity, in, or out of, the said plantation," so conveyed, with a covenant, "that the said George W. had, in himself, good right, power and absolute authority to convey and enfeoff the said lands," followed with a warranty of title.

This Court will not afford any relief in a matter resting on a fraud, or savoring of it. Where an infant *cestui que trust,* by misrepresentation of her age, induced a trustee to deal with her in the payment of money, wilfully misleading him as to her age, it was held that there was proof of her intention to commit a fraud, and the trustee could not be liable to her over again when she came of age. *Overton* vs. *Banister,* 3 Hare, 503.

There the inducement to the payment was the deception practiced by the infant, and this furnished conclusive evidence of her design to perpetrate a wrong. The very deed contained a recital of the falsehood.

It would be carrying the rule thus indicated to an extent which could not be justified by the consideration with which infants are regarded by the law, to apply it to the case in hand. The plaintiffs made no misrepresentation of their age to Gregg, and received no consideration for the release, or any advantage under it. Their mere covenant that their father "had good right to grant, convey and enfeoff the said lands," is not, by a presumption of fraud which cannot obtain against an infant, to be ascribed to a motive to mislead and deceive. The very contest over this devise shews, at least, a strong impression on the parties to the release that the remainder was of such a character that it could be barred by the feoffment of their father. If the minors had been even of an age from which full knowledge of their acts could be presumed, they might not be held bound by such a mistake of law. There would scarcely be an act of an infant against his interest which would not be held to conclude him if the argument urged in this regard prevailed. Gregg has his covenant. To that he may look, and we concede enough to him when we say, in relation to it, that our judgment here is not to prejudice any right which he may seek under it in a Court of law.

It is too late for the exception that the bill is filed by Archibald Clark Seabrook, a minor, without the interposition of a next friend. The objection may be more than a formal one, but it should have

been taken in the Court below. To perfect the record, the said plaintiff is at liberty to move for the appointment, *nunc pro tunc*, in the Circuit Court.

The order for the partition must, however, be reformed. The plaintiff, Archibald Clark Seabrook, and the defendant, Eliza Sarah Seabrook, are both infants. Although they have a vested interest, still, in the event of their dying under 21 years of age, the right of the one so dying will be divested. They are entitled, therefore, to partition commensurate with the interest each now has, and in consistency with the conditions on which it is held. The writ of partition must, therefore, direct that one-ninth of the plantation mentioned in the pleadings be set apart to the said Marcellus M. Seabrook, and his heirs forever; one-ninth to the said Archibald Clark Seabrook, to be held by him, subject to the conditions and limitations attaching to and on his said interest in the same, under the will of the said William Seabrook, as in this opinion expressed, and one-ninth to the said Eliza Sarah Seabrook, to be held by her on the same terms and limitations as pertain to the share to be allotted to the said Archibald Clark Seabrook, above set forth, and it is so ordered and adjudged.

If the return to the writ of partition should recommend that the share of either of the said parties in the real estate to be allotted to them, severally, be sold, or that payment be made to one or more of them, in substitution of their interest, then the money arising from such sale or payment shall be held subject to the same conditions and limitations which attach on the shares directed to be allotted to them.

In all other respects the Circuit decree is affirmed, and the appeal dismissed:

*Willard*, A. J.. and *Wright*, A. J., concurred.